CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 19 2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TOBY KERSHNER, | ) | Civil Action No. 7:16-cv-00063 |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| B.A. WRIGHT, et al., | ) | By:   Hon. Michael F. Urbanski |
|    Defendants. | ) |       United States District Judge |

Toby Kershner, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the remaining defendants, who are associated with the River North Correctional Center ("RNCC") and the Virginia Department of Corrections ("VDOC"), failed to protect him from an attack by another inmate.[1] The remaining defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition. After reviewing the record, the court grants the remaining defendants' motion for summary judgment.

I.

Plaintiff was returning to his housing unit from the prison dining hall on March 4, 2015, when another inmate, C. Fielder, attacked him outside of the A-building. An officer immediately reported the fight, ordered them to stop fighting, and deployed a chemical mist on them. Both inmates stopped fighting and were restrained without incident. Staff transported Plaintiff to the medical department where a nurse noted he had lacerations to his upper lip and the bridge of his nose and his nose was disfigured and bleeding.[2] No formal investigation of the incident occurred, and no video was retained because it was deemed a minor altercation.

---

[1] The court terminated the other defendants by a prior memorandum opinion and order.
[2] Plaintiff alleges that defendant Horton, the institutional investigator, took pictures of Plaintiff's injuries, but Horton avers that there is no record of those pictures existing.

In the amended complaint, Plaintiff alleges generally, "I told them that I couldn't go back to C&D buildings due to the gang members 'extorting and threatening' me." Plaintiff cites his informal complaint dated March 11, 2015, in support of this general allegation. Plaintiff alleged in that informal complaint, "I brought to ya'lls attention via request forms that I couldn't go back to C&D buildings due to the extortion by the gangs. A month later, I get my nose broke, punched and stomped into the concrete sidewalk by [] one of the gang members who were extorting me. . . . Why didn't ya'll believe me?"[3] Defendant Assistant Warden Booker responded to the informal complaint saying, "There was no way to verify."

Defendant Horton spoke with Plaintiff after the fight to discuss the alleged extortion. However, Plaintiff did not state any specific names, cell numbers, dates, or information about the alleged extortion. Furthermore, Plaintiff did not discuss any connection between inmate Fielder and the alleged extortion. Nonetheless, Plaintiff believes defendants Lt. J.M. Hale and Jason Higgins "should have" known of a risk of attack because Plaintiff told these two defendants before the attack that Fielder was hiding contraband, specifically an improvised tattoo gun, from staff.

Horton avers that, before the fight, Plaintiff and inmate Fielder were both housed in the same pod without any incident and that there is no record that Plaintiff and Fielder had any history of complaints, issues, or altercations before their fight.

## II.

Defendants filed a motion for summary judgment, arguing that they are entitled to qualified immunity. Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not

---

[3] These referenced forms are not in the record.

2

violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993).

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a § 1983 claim for a failure to protect an inmate from violence, the inmate must show: (1) that a prison official had a "sufficiently culpable state of mind," and (2) that the inmate sustained a serious or significant physical or emotional injury.[4] Id. at 834 (internal quotation marks omitted). A "sufficiently culpable state of mind" means that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see id. at 840-42 (noting evidence concerning "constructive notice" of a substantial risk is generally not sufficient to establish a deliberate indifference claim). A showing of negligence is not sufficient. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Thus, an official's failure to alleviate a significant risk that he should have, but did not, perceive does not describe an Eighth Amendment claim. Farmer, 511 U.S. at 838. Stated differently, prison officials are not liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844; see Iko, 535 F.3d at 241 (stating that it was insufficient to show a defendant "should have" recognized a substantial risk of harm).

In Danser v. Stansberry, 772 F.3d 340 (4th Cir. 2014), the Fourth Circuit Court of Appeals vacated a district court's order finding a dispute of material facts and denying qualified immunity in a failure to protect case. The record on summary judgment revealed that the inmate, Danser, told a guard, Officer Boyd, that he wanted to go to the outside recreation cage. Officer Boyd assigned groups of inmates to each recreation cage based on inmates' custody levels, the

---

[4] Plaintiff's disfigured, broken nose is an injury sufficient for this analysis. See, e.g., Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

4

location of the inmates' cells in the facility, and data in a computer-generated Special Housing Unit ("SHU") Report.[5] Officer Boyd placed Danser in an outside recreation cage with three other inmates, one of whom would be the assailant who had never met Danser before. The SHU report did not mention that Danser was a sex offender or that the assailant was in a gang. Nonetheless, Officer Boyd could have discovered that information if he had looked in other prison databases, but he did not.

Instead of supervising the recreation cages as required by his position, Officer Boyd left his post, and the assailant "knocked Danser to the ground and repeatedly kicked and stomped his face, head, and body. . . . utter[ing] obscenities and commented on Danser's sex-offender status during the attack." Id. at 344. Danser suffered significant injuries as a result.

Danser sued under 42 U.S.C. § 1983, arguing that Officer Boyd was deliberately indifferent to a substantial risk of harm. Officer Boyd argued to the district court that he did not have a culpable state of mind because "he was not aware of any facts suggesting that [the assailant] posed a particular threat to Danser." Id. at 347. The district court ruled in Danser's favor and set the matter for trial, primarily because Officer Boyd assigned Danser, a convicted sex offender, to the same recreation cage as the assailant, who was a known violent gang member, and that Danser's injuries occurred when Officer Boyd left the area unsupervised. The Court of Appeals reversed, noting primarily that "the record as a matter of law fails to show that [Officer] Boyd must have appreciated that his act of leaving Danser and [the assailant] together in an unsupervised area created an excessive risk to Danser's safety on that basis." Id. at 348. The Court of Appeals rejected Danser's argument that "it was 'obvious' to [Officer] Boyd that

---

[5] The SHU Report included inmates' names and identification numbers and noted any "separation orders," which are orders describing who each inmate should be kept separate from in the SHU. For example, a separation order would prevent two inmates who had previously fought from participating in the same recreation period.

5

placing Danser in a recreation cage with [the assailant] and leaving the area unsupervised would have led to an attack." Id. at 348-49.

In contrast to Danser, Leary v. Livingston County, 528 F.3d 438 (6th Cir. 2008), and Odom v. South Carolina Department of Corrections, 349 F.3d 765 (4th Cir. 2003), are two examples of correctional officers exhibiting deliberate indifference to a substantial risk of inmate violence. In Leary, the Court of Appeals for the Sixth Circuit affirmed the district court's denial of a correctional officer's motion for summary judgment because the record established deliberate indifference. The officer told the detainee to not discuss his pending criminal charge for allegedly raping a nine-year-old girl because another inmate might attack him for it, the officer subsequently told other inmates about the detainee's alleged sex offense, and the officer did nothing to protect the detainee from a substantial risk of harm. 528 F.3d at 441. Similarly in Odom, the Court of Appeals for the Fourth Circuit reversed a district court's grant of summary judgment to correctional officers on the question of deliberate indifference. The prisoner, Odom, told correctional officers of his fear of particular inmates, and the officers saw the particular inmates threaten Odom, attempt to break into Odom's cell, and goad others to attack Odom. Various staff told the officers to move Odom to safety, but the officers allowed the particular inmates to attack Odom and said Odom got what he deserved for being a snitch. 349 F.3d at 771. In both Leary and Odom, the officers subjectively recognized the substantial risk of serious harm facing the inmate-plaintiffs, yet they took no steps to protect the prisoners from the known risk.

In contrast to Leary and Odom, Defendants are entitled to qualified immunity and summary judgment because the record, even when viewed in a light most favorable to Plaintiff,

fails to demonstrate any defendant's deliberate indifference. The record lacks any evidence of a separation order or any conflict whatsoever between Plaintiff and Fielder before the attack. Although Plaintiff claims in his informal complaint filed after the fight that he had complained generally to unspecified staff about "gang extortion" involving unspecified inmates, there is no evidence to suggest that any named defendant was deliberately indifferent to a substantial risk that Fielder or any other particular inmate posed a substantial risk to Plaintiff on or before March 4, 2015. Plaintiff argues in his response to the summary judgment motion that deliberate indifference should be inferred from the fact that he "told Lt. J.M. Hale & Jason Higgins that inmate Fielder had a tattoo gun hidden in his locker." ECF 54, at 1. But even assuming as true Plaintiff's contention that he told correctional officers that Fielder had contraband, that does not rise to the level of deliberate indifference to an attack by Fielder. Simply being aware that Plaintiff had provided information about another inmate does not establish a "sufficiently culpable state of mind" required to state an Eighth Amendment failure to protect claim. There is no suggestion that any defendant was aware that Fielder had any idea that Plaintiff had told authorities about his tattoo gun or that Fielder intended to harm Plaintiff because of it. Without this evidence of a "sufficiently culpable state of mind," Plaintiff's claim sounds in negligence, and does not rise to the level of an Eighth Amendment claim. See Iko, 535 F.3d at 241 (stating that it was insufficient to show a defendant "should have" recognized a substantial risk of harm and recognizing negligence is below the threshold to state an Eighth Amendment claim). Accordingly, the remaining defendants are entitled to qualified immunity and summary judgment.

## III.

For the foregoing reasons, the court grants the remaining defendants' motion for summary judgment.

ENTER: This 19th day of April, 2017.

/s/ Michael F. Urbanski
United States District Judge